KLIEBERT, Judge.
This is an appeal by defendant-lessee, The Great Atlantic and Pacific Tea Company, Inc., from a judgment denying its third-party demand against its co-defendant-owner-lessor, Eagle Enterprises of Jefferson, Inc. for breach of a lease provision. For the reasons which follow we affirm.
Plaintiff Wanda Saltalamacchia originally filed suit for personal injuries allegedly sustained when water around a water vending machine, owned by Foremost-McKes-son, A & P’s sublessee, installed on the sidewalk of a store building, owned by Eagle and leased to A & P, caused her to slip and injure herself. The suit named as defendants: A & P, Eagle, Foremost-McKes-son Corporation, and Home Insurance Company, the alleged insurer of Eagle.
A & P made a letter demand for a defense and indemnity from Eagle. When it was rejected, A & P filed a third-party demand against Eagle (Home was not included as a defendant) alleging Eagle breached the lease by failing to comply with the lease provision which reads as follows:
Lessor’s said public liability insurance shall also be extended to protect and insure Lessee and shall include indemnification of Lessee from and against any and all liability occasioned by theft, damage or loss of any vehicles which may enter the Center and any additions thereto, by any person, firm, or corporation, and also against any and all liability occasioned by accident or disaster resulting in injury therein to any person (including loss of life). Such insurance and indemnity shall be in the amount of TEN THOUSAND ($10,000.00) DOLLARS as to theft, loss of, and damage to any vehicle and contents, and in the amount of TWO HUNDRED FIFTY THOUSAND ($250,000.00) DOLLARS in respect of injury to any one person (including loss of life), and FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS as to injury to two or more persons (including loss of life), arising in any one accident or disaster. Lessor shall pay the premiums therefor and deliver to Lessee certificates evidencing such coverage and that it may not be changed, cancelled or terminated during the term and any extensions thereof. Lessee shall reimburse Lessor for any additional insurance premiums resulting to Lessor from the addition of the new building.
Prior to trial of plaintiff’s suit, a settlement was effected with the plaintiff for $6,000.00, of which $5,000.00 was contributed by A & P and $1,000.00 by Foremost-McKesson. Eagle and Home Insurance did not participate or join in the settlement. Following the settlement the only matter before the trial court and now before us on this appeal is A & P’s third-party demand.
A hearing on the third-party demand was held on February 9, 1984. At this hearing both parties stipulated to the admission in evidence of the following: (1) plaintiff’s deposition, (2) the depositions of several witnesses to the accident, (3) the lease between A & P and Eagle, and (4) a copy of the general liability policy issued by Home Insurance Company.[1]
A & P’s contention in the trial court as to its basis for recovery is difficult to determine from the record before us. In one instance, A & P contends the lease agreement required Eagle to furnish A & P with a public liability insurance policy which would protect and indemnify A & P from the claims urged by the plaintiff; while in another instance, A & P contends the contents of the lease provisions required Eagle *313 to personally furnish a defense and indemnify A & P from plaintiff’s claims.
Apparently the trial court considered the issue raised by the third-party demand was not whether there was coverage for the plaintiffs claim under the Home policy; but rather, whether Eagle had satisfied its contractual obligations to A & P by obtaining the Home policy. As to that issue, the trial judge concluded the general liability policy obtained by Eagle did satisfy its contractual obligation to A & P.
On appeal, A & P contends there are two issues, i.e., (1) whether Eagle or Home had a duty to defend and indemnify A & P in the suit and (2) whether plaintiff’s claim was covered by the policy of insurance issued by Home to Eagle.
Notwithstanding A & P’s contentions as to the issue presented on the appeal, A & P failed to make Home a defendant in the suit and we cannot determine from the record whether A & P was a named insured in the policy. Consequently, our inquiry is limited to that considered by the trial court, i.e., what was Eagle’s contractual obligation to A & P and has it been fulfilled by Eagle obtaining a comprehensive general liability policy from Home.
It is well settled principle in our law that provisions of a contract must be construed in such a way as to give effect to the obvious intention of the parties. Lambert v. Maryland Casualty Co., 418 So.2d 553 (La.1982).
Considering the lease involved here as a whole, the obvious intention of the parties, in drafting the above quoted provision, was to place the financial burden of third-party claims for injuries or property damages sustained in a shopping center area common to all tenants and maintained by the owner of the center on the owner and to assure against a shift of the burden to the tenants due to the owners inability to pay by obligating the owners to obtain insurance protection against such claims to specified limits. Although the word “indemnity” is contained in the provisions, the provision as a whole is not drafted as an indemnification agreement and hence does not connote an intention to enter into an indemnification agreement. Further, there is nothing in the lease or in the provision itself to indicate an intention to impose on Eagle liabilities arising from the tenant’s conduct of its business operations on the leased premises. Further, although there is some indication of a desire to have the tenant included as a named insured under the policy, under the pleadings and the evidence before us, we are not at liberty to inquire into the question.
Thus, as we construe the intention of the parties and the record before us, the issue is simply — has Eagle met its contractual obligation to A & P by obtaining a comprehensive general liability policy from Home.
The excerpts of an insurance policy contained in the record contains the following coverage provision:
COVERAGE E — COMPREHENSIVE GENERAL LIABILITY-
BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY COVERAGES
1. The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
bodily injury or property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.
The trial court concluded the acquisition of a policy containing this coverage by Eagle *314 satisfied Eagle’s contractual obligations under the above quoted provisions of the lease and we agree.
Accordingly, the judgment of the trial court is affirmed. All costs are to be paid by the appellant.
AFFIRMED.

. We found no policy in the record. There were excerpts purporting to show comprehensive general liability coverage of an unknown policy.